# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JAMIE M. BOLDUAN,

    **Plaintiff,**

    v.                                         Case No. 12-CV-1003

LIFE INSURANCE COMPANY OF NORTH AMERICA,

    **Defendant.**

## DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS AND MOTION TO REMAND

        This is an action for clarification of the plaintiff's, Jamie M. Bolduan ("Bolduan"), rights with respect to long term disability benefits provided under the terms of an employee welfare benefit plan governed by the Employee Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). The defendant, Life Insurance Company of North America, ("LINA"), serves as the claim fiduciary for the ERISA plan. Bolduan challenges LINA's determination to offset her long term disability benefits by funds she received from a personal injury settlement.

        Before the Court is LINA's motion to dismiss this action without prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to exhaust administrative remedies. Alternatively, LINA asks that the matter be remanded to the plan's administrative appeal process.

        The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General L.R. 73 (E.D. Wis.). For the reasons stated below, the Court will remand the matter to LINA for purposes of processing an administrative appeal. The Court will stay the action pending the resolution of Bolduan's administrative appeal.

## BACKGROUND

Bolduan alleges that she was injured in a motor vehicle accident with an uninsured motorist. (Compl. ¶ 6, Docket #1-3.) Bolduan made an uninsured motorist claim against American Standard Insurance Company of Wisconsin, who tendered policy limits to Bolduan. (*Id.* ¶¶ 7, 9.) At the time of the motor vehicle accident, Bolduan alleges she was covered by a policy of disability insurance issued by LINA to her employer. (*Id.* ¶ 10.) Bolduan submitted a claim for long term disability benefits. (*Id.* ¶¶ 11-12.) In a letter dated September 29, 2011, LINA informed Bolduan that her claim for long term disability benefits had been approved. (Declaration of Kellie Downey "Downey Decl.," Ex. 2 at 1, Docket # 11-2.) The letter also stated that the disability contract "provides a monthly benefit at 67% of your Covered Earnings reduced by Other Income Benefits and applicable taxes. These benefits are reduced by Other Income Benefits as well as any applicable taxes. Covered Earnings and Other Income Benefits are defined by your contract." (*Id.*)

The disability policy defines Other Income Benefits to include "any amounts paid on account of loss of earnings or earning capacity through settlement . . . where a third party may be liable." (Downey Decl., Ex. 1 at 10, Docket # 11-1.) In December 2011, after receiving notice of Bolduan's uninsured motorist settlement, LINA initiated an offset against her monthly disability benefit for the net settlement amount received by Bouldan, pro-rated over 60 months. (Downey Decl. ¶ 4.)

The disability policy contains an amendatory rider that provides, in relevant part:

> If the claim is approved, the Insurance Company will pay the appropriate benefit. If the claim is denied, in whole or in part, the Insurance Company will provide written notice within the review period. The Insurance Company's written notice will include the following information:
>
> 1. The specific reason(s) the claim was denied.
> 2. Specific reference to the Policy provision(s) on which the denial was based.

3. Any additional information required for the claim to be reconsidered, and the reason this information is necessary.
4. In the case of any claim for a disability benefit: identification of any internal rule, guideline or protocol relied on in making the claim decision, and an explanation of any medically-related exclusion or limitation involved in the decision.
5. A statement regarding the right to appeal the decision, and an explanation of the appeal procedure, including a statement of the right to bring a civil action under Section 502(a) of ERISA if the appeal is denied.

**Appeal Procedure for Denied Claims**

Whenever a claim is denied, there is the right to appeal the decision. A written request for appeal must be made to the Insurance Company within 60 days (180 days in the case of any claim for disability benefits) from the date the denial was received. If a request is not made within that time, the right to appeal will have been waived. (Downey Decl., Ex. 1 at 20-21.)

## DISCUSSION

*1. Standard of Review*

LINA brings this motion pursuant to Fed. R. Civ. P. 12(b)(6). The complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Factual allegations must be enough to rise above the speculative level. *Pisciotta v. Old Nat. Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007). Accordingly, enough facts must be set forth to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The essence of the motion is that even assuming all asserted facts are accurate, plaintiff has no legal claim. *Payton v. Rush–Presbyterian–St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999).

In their briefs, the parties refer to two documents appended to the Downey Declaration: the policy of disability insurance and a letter dated September 29, 2011 approving Bolduan's claim for disability benefits. Documents attached to a motion to dismiss are considered part of the pleadings

-3-

if they are referred to in the plaintiff's complaint and are central to her claim. Such documents may be considered by a district court in ruling on a motion to dismiss. *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

In this case, reference to the policy is made throughout Bolduan's complaint, (Compl. ¶¶ 10-15), and is central to Bolduan's request for relief, which asks the Court to interpret the policy. Further, although the complaint does not mention the September 29, 2011 letter by name, it does allege LINA agreed to provide disability benefits to the plaintiff. (*See* Compl. ¶ 12.) LINA's agreement to provide disability benefits to Bolduan comes from the September 29, 2011 letter and once again, is central to Bolduan's claim. Thus, it is proper for the Court to consider the disability insurance policy and the September 29, 2011 letter in addressing LINA's motion to dismiss.[1]

### 2. *Exhaustion of Administrative Remedies*

LINA argues Bolduan failed to exhaust her administrative remedies by not initiating an administrative appeal disputing the offset before filing suit. (Def.'s Br. at 3, Docket # 12.) Bolduan does not deny that she has not initiated an administrative appeal; rather, she argues the plain language of the policy provides for an administrative appeal only for "denials" of claims and LINA approved the claim, subject to the offset. (Pl.'s Br. at 4-5, Docket # 16.) Alternatively, Bolduan argues even if the offset constitutes a denial under the policy, LINA failed to follow the procedure set forth in the Amendatory Rider for denial of claims and thus Bolduan's complaint states a claim for breach of the contractual terms under the ERISA plan. (Pl.'s Br. at 8.)

---

[1]LINA also appends to the Declaration of David J. Hanus a letter to Bolduan dated February 24, 2012 regarding a claim for Waiver of Premium coverage under her Group Term Life Insurance Policy. (Docket # 18 and # 18-1.) This document is neither referred to in Bolduan's complaint or central to her claim and thus is not properly considered on a motion to dismiss. Regardless, I need not consider this document to determine whether Bolduan exhausted her administrative remedies. Thus, I will disregard the document, avoiding any concern that defendant's motion must be considered a motion for summary judgment.

Under ERISA, a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "The text of 29 U.S.C. § 1132, providing for civil actions to redress violations of ERISA, does not address whether a claimant must exhaust her administrative remedies before filing suit in federal court." *Gallegos v. Mount Sinai Medical Center*, 210 F.3d 803, 807 (7th Cir. 2000). However, the Seventh Circuit has interpreted ERISA to allow district courts to require exhaustion of administrative remedies as a prerequisite to filing a federal suit. *Powell v. A.T. & T. Communications, Inc.*, 938 F.2d 823, 826 (7th Cir. 1991). The purpose of administrative exhaustion is to minimize frivolous lawsuits, promote non-adversarial dispute resolution, decrease cost and time necessary for claim settlement, and enable the compilation of a complete record. *In re Household Int'l Tax Reduction Plan*, 441 F.3d 500, 501 (7th Cir. 2006) (citing *Gallegos*, 210 F.3d at 808). "In short, Congress intended plan fiduciaries, not federal courts, to have primary responsibility for claims processing." *Powell*, 938 F.2d at 826.

District courts may require administrative exhaustion by parties prior to bringing an ERISA case in federal court, however, they are not compelled to do so. Despite the recognized federal policy in favor of exhaustion, the decision remains within the discretion of the district courts and will only be disturbed on appeal for "abuse of discretion." *See Salus v. GTE Directories Serv. Corp.*, 104 F.3d 131, 138 (7th Cir. 1997). In addition, there are two exceptions to the exhaustion requirement. An ERISA plaintiff need not exhaust his administrative remedies if: 1) administrative remedies are not available; or 2) pursuing those remedies would be futile. *Gallegos*, 210 F.3d at 808. Futility is demonstrated by

showing that it is "certain" a plaintiff's claim will be denied by the plan administrator. *Ruttenberg v. U.S. Life Ins. Co.*, 413 F.3d 652, 662 (7th Cir. 2005).

The policy at issue here only addresses "denials" of claims. However, the claims procedure for ERISA set forth in the Code of Federal Regulations covers "adverse benefit determinations," which is defined as "a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit . . . ." 29 C.F.R. § 2560.503-1(m)(4). Because an offset of benefits is a "reduction," it is governed by ERISA's Regulations on claims procedures.

Additionally, as pertinent here, ERISA provides that claimants must receive "adequate notice in writing . . . setting forth the specific reasons" for the denial of benefits, "written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133. The Regulations require the plan administrator to provide the claimant with written or electronic notification of any adverse benefit determination, setting forth a description of the plan's review procedures, the time limits applicable to such procedures, and a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review. 29 C.F.R. § 2560.503-1(g). If a plan fails to establish or follow a claims procedure that complies with the regulation, the claimant is "deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. § 2560.503-1(l).

It is undisputed that LINA never notified Bolduan that it was going to begin the offset of her disability benefits or explained the reasons it was going to begin the offset. Nor did LINA provide notice setting forth a description of the plan's review procedures, the time limits applicable to such procedures, and a statement of the claimant's right to bring a civil action under section 502(a). It is

true that the plan contained the appeals procedure. But this is not the type of notice contemplated by the Regulations. As discussed above, the Regulations require written or electronic notification of any adverse benefit determination, setting forth a description of the plan's review procedures, the time limits applicable to such procedures, and a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review. Thus, the Regulations require a separate notice to issue at the time of the adverse determination. Plainly stated, Bolduan should have received her notice when the offset was initiated. Accordingly, given LINA's failure to provide Bolduan with proper notice, pursuant to the Regulations, she is deemed to have exhausted the administrative remedies available under the plan. *See Brown v. J.B. Hunt Transport Services, Inc.*, 586 F.3d 1079, 1087 (8th Cir. 2009); *cf. Schorsch v. Reliance Standard Life Ins. Co.*, 693 F.3d 734, 742 (7th Cir. 2012) (finding plaintiff was not deemed to have exhausted her administrative remedies when she received a notice that told her how and where she could request a review of the plan's decision and the allotted period in which she could "state the reasons why you feel the claim should not have been denied").

Again, although not required to do so, district courts may require administrative exhaustion. In this case, despite finding that Bolduan is deemed to have met the administrative exhaustion under the Regulations, the Seventh Circuit's strong policy preference for requiring claimants to first exhaust their administrative remedies compels remand in this case. This is particularly appropriate because the parties have not argued and the Court finds no basis to conclude that a remand would be futile. Consistent with the intent of Congress that plan fiduciaries, not federal courts, have the primary responsibility for claims processing, *Powell*, 938 F.2d at 826, I will remand this action to allow Bolduan to pursue her administrative remedies with the plan.

Finally, the Court finds that judicial economy will better be served by staying the proceedings related to plaintiff's ERISA claim, rather than dismissing the claim. LINA has stated that upon remand, it stands ready to process any administrative appeal with respect to the offset at issue. (Downey Decl. ¶ 6.) Thus, plaintiff's request for review of her claim will be deemed filed as of the date of the entry of this order. Bolduan should provide LINA with any additional information she deems necessary for considering the appeal. LINA will have the time allowed under the disability policy, a maximum of 45 days, in which to make its determination. (Downey Decl., Ex. 1 at 21.) The parties are directed to furnish the Court with a written status report after LINA makes its determination or after 45 days have elapsed from the date this order is entered, whichever occurs first.

**NOW, THEREFORE, IT IS ORDERED** that the Defendant's Motion to Dismiss and Motion to Remand (Docket # 10) is **GRANTED IN PART AND DENIED IN PART**. Defendant's Motion to Dismiss is **DENIED**. The Court orders the case will be **REMANDED** to allow plaintiff to exhaust her administrative remedies. The case will be **STAYED** pending the outcome of plaintiff's administrative appeal.

Dated at Milwaukee, Wisconsin this 14th day of December, 2012.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge